
# UNITED STATES DISTRICT COURT
for the

District of Maryland

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>$189,150.00 IN UNITED STATES CURRENCY | ) ) ) ) ) Case No. **17 - 0 8 2 5 - ADC** |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ District of ____Maryland____ be seized as being subject to forfeiture to the United States of America. The property is described as follows:

$189,150.00 IN UNITED STATES CURRENCY SEIZED ON OCTOBER 25, 2016

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____
*(not to exceed 14 days)*

☑ in the daytime – 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge _____duty_____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _15 March 2017 @ 1435 hrs_      _____
                                                       *Judge's signature*

City and state:  Baltimore, Maryland                   Hon. A. David Copperthite
                                                       *Printed name and title*


# UNITED STATES DISTRICT COURT
for the
District of Maryland

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>$189,150.00 IN UNITED STATES CURRENCY | )<br>)<br>) Case No.   **17 - 0 8 2 5 - ADC**<br>)<br>) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____Maryland_____ is subject to forfeiture to the United States of America under _____ U.S.C. § _____ *(describe the property)*:

21 U.S.C. § 881(a) and (b), and 18 U.S.C. § 981(b)

$189,150.00 IN UNITED STATES CURRENCY SEIZED ON OCTOBER 25, 2016

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent James M. Stull
*Printed name and title*

Sworn to before me and signed in my presence.

Date: *15 March 2017*

_____
*Judge's signature*

City and state: Baltimore, Maryland

Hon. A. David Copperthite
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

17 - 0 8 2 5 - ADC

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF $189,150.00 IN UNITED STATES CURRENCY | Case No._____<br><br>AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT |

I, James M. Stull, Special Agent with the U.S. Department of Homeland Security Investigations, being duly sworn, hereby depose and state as follows:

### I. PROPERTY TO BE SEIZED

1. This affidavit is submitted in support of a warrant to seize $189,150.00 in United States currency (the "Subject Property"), seized from Michael P. STROHL, based on probable cause to believe that the currency is subject to seizure and forfeiture under 21 U.S.C. § 881(a)(6) and (b), and 18 U.S.C. § 981(b), because it constitutes: (1) money, negotiable instruments, securities or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money, negotiable instruments, or securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

### II. AGENT BACKGROUND

2. I am currently employed by the U. S. Department of Homeland Security, Homeland Security Investigations (HSI),[1] as a Special Agent and have been so since July 2006.

---

[1] In 2010, Immigration & Customs Enforcement ("ICE") underwent a re-organization. Several investigative components of the Department of Homeland Security were merged into one investigative agency, called Homeland Security Investigations.

1

Consequently, I am an "Investigative or Law Enforcement Officer of the United States" within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. As part of my employment with HSI, I attended the Criminal Investigator Training Program, which is a twelve week basic program for all federal criminal investigators held at the Federal Law Enforcement Training Center in Glynco, Georgia. I also attended Immigration & Customs Enforcement Special Agent Training, which provided me with an additional eleven weeks of training.

4. My current assignment within HSI is to the Baltimore Seaport and Airport – High Intensity Drug Trafficking Area (HIDTA) Group, which investigates unlawful acts and violations of federal customs law, including violations of Titles 18, 19, and 21 of the United States Code, in and around the U.S. Customs territory, ports of entry, and related areas. In the course of this assignment, I have participated in numerous federal and state narcotics investigations relating to drug trafficking, drug smuggling, and money laundering violations and have used the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short and long-term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance, including wire interceptions; and preparing and executing search warrants that have led to seizures of narcotics, firearms, and other contraband.

5.      The facts contained in this affidavit are based on my personal knowledge, as well as the knowledge and observations of the other agents involved in this investigation.[2] This affidavit is intended to show only that there is sufficient probable cause for the requested warrant; it does not set forth all of my knowledge about this matter.

### III.   PROBABLE CAUSE

6.      On October 25, 2016, at approximately 6:15 a.m., HSI Special Agents ("S/A") Robert Swain III and Milton Lynn arrived at Baltimore Washington International ("BWI") Airport to investigate a call they received about an individual attempting to board a flight with bulk cash. Upon arrival at BWI, Maryland Transportation Authority Police ("MTAP") told S/As Swain and Lynn that, during a security screening at a Transportation Security Administration ("TSA") checkpoint, TSA officers had identified a large quantity of cash in one of STROHL'S carry-on bags. STROHL agreed to accompany MTAP officers to the MTAP substation and, although STROHL was advised by MTAP officers that he was free to go at any time, STROHL remained in an MTAP interview room.

7.      STROHL subsequently agreed to speak with the HSI agents regarding the currency in his possession. At the outset of the interview, STROHL provided the agents with two forms of identification — a North Carolina driver's license and a U.S. Government Armed Services Identification card. STROHL also provided agents with two business cards. Both business cards appeared the same, and identified STROHL as the CEO of "Lelantos Group," but one card provided an office location in Las Vegas, Nevada and the other provided an office location in Mooresville, North Carolina.

---

[2]     All conversations and statements described in this Affidavit are related in substance and in part, unless otherwise indicated

8. At this point, S/A Lynn exited the interview and checked law enforcement databases for references to STROHL. S/A Lynn did not locate any information.

9. Upon returning to the interview room, STROHL stated to S/A Lynn that, since retiring from the military, he had been involved in a variety of business ventures. He stated that Lelantos Group was a holding company for several defense-related contracts and interests in several defense-related companies.

10. STROHL further stated that he had voluntarily told TSA about the currency in his bag, and that the currency was, in fact, not STORHL'S; rather, STROHL said that he was acting as a broker for two parties, and that they money was to be used to purchase a very rare Porsche automobile in California. STROHL advised that there were approximately $180,000.00 in his bag. STROHL further stated that, in the past, he was, on occasion, involved in the import and export of automobiles.

11. However, STROHL later made statements that appeared inconsistent with his assertion that he was involved in brokering of an exotic car sale. At approximately 6:40 a.m., HSI TFO Donald Hayes and HSI K9 Bella encountered STROHL. STROHL and TFO Hayes began having casual conversation about K9 Bella and other dogs with whom Hayes had worked. During this conversation, STROHL stated that he had travelled through BWI about two weeks earlier with another large sum of cash, but that he had been permitted on that occasion to board his flight. STROHL further stated that he receives ten percent "for the trip," and that "this trip" would be his last. These statements suggest that STROHL is more akin to a courier, who is paid by the trip and on the basis of the quantity currency he transports, rather than a broker in cars.

12. To verify STROHL'S claim about the source and purpose of the money, S/A Lynn asked STROHL to provide law enforcement with information about the two parties for whom

STROHL was acting as a broker in the sale of the rare Porsche. STROHL stated that he could not reveal the name of his clients due to a nondisclosure agreement that he had signed, but that the currency was in fact legitimate. STROHL repeated that, as much as he would like to cooperate, the non-disclosure agreements with both parties prevented him from doing so and that disclosure would constitute a breach of contract.

13. At this point, at approximately 8:35 a.m., the agents asked STROHL to remove the currency from his luggage in preparation for a K9 sniff. STROHL agreed to do so. Once the currency — which consisted of loose bundles of a mixture of denominations rubber banded together — was removed from STROHL'S bags, K9 Bella conducted an exterior scan of the bags and rendered a positive alert for the presence of the odor of narcotics. K9 Bella then conducted a scan of the Subject Property, and again rendered a positive alert for the presence of the odor of narcotics.

14. The HSI agents subsequently sought to determine whether STROHL was licensed as a money remitter or as a money remitting business, but a search of available databases/records indicated did not indicate STROHL held any such a license. The Subject Property was thereafter administratively seized by HSI Special Agent Swain, and STROHL was given a receipt for the currency. The Subject Property, which totaled $189,150.00, was then deposited with Loomis Financial Services.

15. Based on my training and experience, I know that drug proceeds are generally packaged in loose bundles of circulated U.S. Currency of mixed denominations that are rubber banded together and transported, as was the Subject Property here. Additionally, a K9 trained in the detection of narcotics positively alerted to the odor of narcotics both on the bags carrying the currency and the currency itself. STROHL'S explanation for carrying the currency — the

brokering of an exotic car sale — is moreover inconsistent with (1) his ownership and management of a purported defense contracting company (that does not have a location in Baltimore), and (2) his admission that he was being paid for his services, by the trip, in an amount equal to ten percent of the currency he was couriering. Finally, the source and true owners of the funds was known to STROHL; however, STROHL was unwilling to provide the names of these parties, who have a valid claim to the currency, to law enforcement. Such disclosure would have assisted law enforcement in further determining the validity and origin of the currency. In my training and experience, the decision to let the currency be seized, rather than identify the true owners of a bulk cache of currency, is consistent with the transportation or concealment of drug proceeds.

## IV.   CONCLUSION

16.   Based on the foregoing, it is hereby requested that United States Homeland Security Investigations be authorized to seize, pursuant to 21 U.S.C. § 881(a)(6) and (b), and 18 U.S.C. § 981(b), the $189,150.00 in United States currency seized from Michael P. STROHL in Baltimore, Maryland on October 25, 2016.

I, James M. Stull, affirm under penalties of perjury that the facts and circumstances recounted are true and accurate to the best of my knowledge, information and belief.

_____
Special Agent James M. Stull
Homeland Security Investigations


Signed to and sworn before me this 15th day of March 2017.

_____
Hon. A. David Copperthite
United States Magistrate Judge