IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Civil No. ELH-17-0735 |
| $189,150.00 in United States Currency, | : | |
| Defendant. | : | |

: : : : : : :

**GOVERNMENT'S OPPOSITION TO
CLAIMANT'S MOTION TO DISMISS**

On March 17, 2017, TSA agents found $189,150.00 in cash, bundled in rubber bands, in the carryon luggage of Michael Strohl.  A trained canine alerted positively to the presence of the odor of narcotics on both the cash itself and the bags that had been holding it.  Strohl denied that the cash was his, but refused to name the true party in interest because of a claimed non-disclosure agreement.  Strohl told officers that, like a drug courier, he was making ten percent of the currency he carried (that is, nearly $20,000) for delivering it; he claimed the money was going to be used to facilitate an exotic car sale.  Strohl also indicated, again like a drug courier, that he had flown from Baltimore to California with large quantities of cash in the past without any problem.  He separately stated that he owned a business that did defense contracting work (not a cash-intensive business) that was located in neither Baltimore nor California.

Under the "totality of the circumstances," these facts allege a "reasonable belief" that the government will be able to prove at trial that the cash is subject to forfeiture under 21 U.S.C. § 881.  *See United States v. $74,500 in U.S. Currency,* 2011 WL 2712604, *2 (D. Md. July 11, 2011); Supp. Rule G(2)(f).  The Court should therefore deny Strohl's pending motion to dismiss.

1

**BACKGROUND**

On March 17, 2017, the Government filed a Verified Complaint for Forfeiture *In Rem* against $189,150.00 in United States currency alleging that the money was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the proceeds of, or as property intended to be used to commit, a drug offense. In accordance with Supp. Rule G(2)(f), which sets forth the requirements for a civil action for forfeiture, the complaint incorporated the affidavit of Homeland Security Investigations ("HSI") Special Agent James M. Stull, which set forth the following facts in support of the complaint. ECF No. 1, Complaint at ¶ 8.

On October 25, 2016, the claimant, Michael Strohl, attempted to board a flight departing from the Baltimore-Washington International Airport ("BWI"), destined to California, with bulk cash. ECF No. 1-2, Affidavit at ¶ 6. At a Transportation Security Administration ("TSA") checkpoint, TSA agents identified a large amount of cash in the claimant's carry-on bags.[1] *Id*. The claimant subsequently agreed to speak with HSI agents regarding the cash. *Id*. at ¶ 7.

During the interview, the claimant said that he had voluntarily told TSA agents about the cash in his bag. *Id*. at ¶ 10. The claimant further stated that the cash was, in fact, not his, but that he was acting as the broker between two other parties and that one of the other parties provided the cash for the purchase of a rare exotic automobile in California. *Id*. The claimant said that, in the past, he had occasionally been involved in the import and export of automobiles. *Id*.

---

[1] In his motion to dismiss, the claimant cites the affidavit in support of his assertion that he voluntarily disclosed the cash to TSA agents. In fact, it is unclear whether or not the claimant told TSA agents about the cash; the affidavit states only that the claimant later told HSI agents that he had done so. *Compare* ECF No. 2, Affidavit ¶ 6, with *id*. ¶ 10, and ECF No. 6-1, Brief ISO Claimant's Motion To Dismiss (hereafter, "Cl. MTD") at 2.

The claimant also said that he had travelled through BWI about two weeks earlier with another large amount of cash, and that on that trip he had been permitted to board his flight. *Id*. at 11. He says he receives ten percent "for the trip" and that "this trip" would be his last. *Id*.

The claimant said that he had been involved in a variety of business ventures since retiring from the military. *Id*. at 9. The claimant provided HSI agents with business cards identifying the claimant as the chief executive officer of the "Lelantos Group" with offices in Las Vegas, Nevada and Mooresville, North Carolina. *Id*. at 7. The claimant said that the Lelantos Group was a holding company for defense-related contracts and interests in defense-related companies. *Id*. at 9.

The claimant refused to provide information about the two parties for whom the claimant alleged he was acting as a broker in the vehicle sale. *Id*. at 12. The claimant said that he could not provide the name of his clients due to a non-disclosure agreement and that disclosure would be a breach of contract. *Id*.

The claimant agreed to remove the cash from his luggage for a trained narcotics canine sniff. *Id*. at 13. The cash that was removed from the claimant's bags consisted of several bundles of mixed denominations rubber-banded together. *Id*. The trained narcotics canine scanned the exterior of the claimant's bags and alerted positively to the presence of the odor of narcotics on the bags. *Id*. The trained narcotics canine then scanned the cash and alerted positively to the presence of the odor of narcotics on the cash. *Id*.

A check of law enforcement databases revealed no information with respect to the claimant. *Id*. at ¶ 8. The claimant does not have any licenses as a money remitter or money remitting business according to a review of available databases or records. *Id*. at 14.

HSI agents administratively seized the cash and gave the claimant a receipt. *Id*. Subsequently the cash, which totaled $189,500.00, was deposited with Loomis Financial Services. *Id*.

## ARGUMENT

Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. Rules") sets forth the requirements for pleading a civil forfeiture complaint. *See* 18 U.S.C. § 983(a)(3) (in pleading a civil action for forfeiture, "the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims"); *see also* 18 U.S.C. § 881(b). Rule G(2) states, among other things, that the complaint must (a) be verified, (b) set forth the basis for subject matter jurisdiction, *in rem* jurisdiction, and venue over the property, (c) describe the property subject to forfeiture with reasonable particularity, (d) if the property is tangible, the location of the property when seized and, if different, the location of the property when the action is filed; (e) identify the statutory authority under which the forfeiture action is brought, and (f) "*state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial*."[2] Supp. Rule G(2)(a)-(f) (emphasis added). The quoted language from Rule G(2)(f) is a codification of the Fourth Circuit's decision in *United States v. Mondragon,* 313 F.3d 862 (4th Cir. 2002)*,* which established the standard for filing a civil forfeiture complaint under the predecessor to Rule G. *See United States v. $36,110.00 in U.S. Currency,* 2009 WL 692830, *4 (D.S.C. Mar. 12, 2009) (the "reasonable belief" standard in Supp. Rule G(2)(f) carries

---

[2] For the purposes of Supp. Rule G(2)(f), the "complaint" includes the incorporated affidavit or declaration of a law enforcement officer. *E.g., United States v. $15,860 in U.S. Currency*, 962 F. Supp. 2d 835, 837 n.1 (D. Md. 2013) (citing Fed. R. Civ. P. 10(c)); *United States v. $448,163.10 in U.S. Currency*, 2007 WL 4178508, *4 (D. Conn. Nov. 20, 2007) (citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir.1989)).

4

forward the standard for the sufficiency of a forfeiture complaint under Supp. Rule E(2)(a) as interpreted by *Mondragon*); *United States v. $79,650 Seized from . . . Afework*, 2009 WL 331294, *2 (E.D. Va. Feb. 9, 2009) (same).

Motions to dismiss a civil forfeiture complaint are governed by Rule G(8)(b), which provides that "the sufficiency of the complaint is governed by Rule G(2)." Supp. Rule G(8)(b)(ii). In other words, a complaint is sufficient, and a motion to dismiss the complaint must be denied, if the complaint satisfies Rule G(2) and establishes a "reasonable belief" that the government will meet its burden at trial. *See United States v. $74,500 in U.S. Currency,* 2011 WL 2712604, *2 (D. Md. July 11, 2011).[3] To meet its burden of proof *at trial*, the Government must ultimately prove by a preponderance of the evidence a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). However, as the court acknowledged in *$74,500*, the Government "is not required to prove its case simply to get in the courthouse door"; it need only show that the facts set forth in the complaint are sufficient to create a *reasonable belief* that the Government will be able to do so. *Id*. Thus, the government may, and often does, gather evidence after filing a complaint for forfeiture. 18 U.S.C. § 983(c)(2); *accord United States v. $36,110.00 in U.S. Currency*, 2009 WL 692830, at *4 (D.S.C. March 12, 2009) ("The provision in § 983(c)(2) would be meaningless if the government were required to meet the

---

[3] In his description of the applicable standard the claimant makes much of the Supreme Court's decision in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). However, that case does not have "any material impact on the analysis in this case. [*Twombly*] concerned the adequacy of a complaint under Federal Rule of Civil Procedure 8(a)(2), not under the already stricter standard set forth in Supplemental Rule G(2)." *United States v. Funds in Amount of $131,500.00 in U.S. Currency,* 2008 WL 3823698, *2 (N.D. Ill. Aug. 12, 2008); *accord United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010) ("Because [*Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] were based on an interpretation of Federal Rule of Civil Procedure 8(a) and the Supplemental Rules expressly state that Supplemental Rule G(2) governs the sufficiency of civil forfeiture complaints, these decisions do not require any alteration to the pleading standards applied to civil forfeiture actions.").

preponderance standard merely to commence an action."). Indeed, the law prohibits dismissing a civil forfeiture complaint "on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Supp. Rule G(8)(b)(ii).

- **A. Numerous civil forfeiture complaints factually similar to the complaint here have satisfied Rule G(2)'s "reasonable belief" standard based on the totality of the circumstances.**

In assessing whether the government has met the pleading requirements and will survive a motion to dismiss, the court must look to the "totality of the circumstances" alleged and adopt a "common-sense approach." *$74,500 in U.S. Currency*, 2011 WL 2712604, at * 2; *United States v. $15,860 in U.S. Currency*, 962 F. Supp. 2d 835, 838 (D. Md. 2013), and *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274 (10th Cir. 2007). "Mere information regarding when, where, and by whom the property was seized is insufficient. However, when this information is coupled with [other] information," such as "unusual packaging, an attempt to conceal the property, and an indication that drugs were present, the facts are sufficient to meet the pleading requirements." *$15,860 in U.S.* Currency, 962 F. Supp. 2d at 838 (citing *Mondragon*, 313 F.3d at 866). Following this rule, courts routinely deny a claimant's motion to dismiss and hold the government's complaint sufficient to meet the "reasonable belief" standard in Rule G(2) in circumstances analogous to those alleged here.

For example, in *United States v. Funds in the Amount of $45,050.00*, the government sought to forfeit cash pursuant to 21 U.S.C. § 881 based on the similarity of a traveler's profile to a drug courier and a positive dog sniff. 2007 WL 2323307 (N.D. Cal. Aug. 9, 2007). There, the government's complaint alleged that investigating agents conducted a routine review of Amtrak's computerized travel manifest and identified a passenger who had paid, in cash, for a one-way ticket from Boston, Massachusetts to Austin, Texas. *Id.* at *1. After consenting to an

interview, the traveler informed agents that he was carrying $30,000 in cash, which he had withdrawn from his bank account, and that he was a construction contractor traveling to Austin to purchase property. *Id.* Agents subsequently found a plastic bag that contained two paper bags filled with $45,050 in bills of mixed denominations in the traveler's luggage, and a canine alerted positively to the presence of the narcotics on the money. *Id.*

The traveler moved to dismiss the complaint, arguing that the government had failed to allege: (1) "a substantial connection between the seized currency and illegal activity" because a "dog sniff does not establish a substantial connection between the currency and illegal narcotics" and the complaint did not otherwise allege that "any narcotics transaction (or any other criminal action) took place; and, (2) "facts affording a reasonable belief that it w[ould] succeed at trial" because the fact that the traveler "fit a drug courier profile, combined with the dog sniff evidence," was insufficient. *Id.* at *3, *4.

The court rejected both arguments and denied the motion to dismiss. First, the court held that "contrary to Claimants' assertion that 'the probative value of a dog sniff is at most minimal,' dog sniff evidence is entitled to significant weight"[4] and is sufficient "for purposes of a motion to dismiss" to establish that the currency had a "substantial connection" to narcotics. *$45,050.00*, 2007 WL 2323307, at *4. Second, the court found that the traveler fit the profile of a drug courier because he made "a last-minute train ticket purchase," had a "horde of currency in smaller denominations," and provided an explanation for the cash of "marginal plausibility (the plan to purchase property)." It then held that although such allegations may not be dispositive,

---

[4] As detailed below, the court found that the Seventh Circuit case, *United States v. $506,231 in U.S. Currency*, 125 F.3d 442 (1997), relied upon by the traveler — and also relied upon by claimant here, *see* Cl. MTD at 6-7 — had been "called into question, if not overturned" by a more recent decision considering the scientific literature supporting the value of dog sniffs. *$45,050.00*, 2007 WL 2323307, at *4.

under the "totality of the evidence," the government had satisfied the pleading requirements of Rule G(2). *Id.* at *5-*6.

Similarly, in *United States v. $50,040 in U.S. Currency*, the government sought to forfeit cash found in a FedEx parcel. 2007 WL 1176631, *1 (N.D. Cal. Apr. 20, 2007). The claimant/sender moved to dismiss the complaint for failing to state a claim. *Id.* The court found that, although the large amount of cash standing alone was insufficient to survive a motion to dismiss, the quantity of currency together with the manner of packaging (consistent with drug trafficking), a positive dog alert, and the sender's inconsistent statements regarding his reasons for sending the money, the government had alleged satisfied Rule G(2). *Accord United States v. Funds in Amount of $131,500.00 in U.S. Currency,* 2008 WL 3823698, *3 (N.D. Ill. Aug. 12, 2008) ("government's allegations regarding the positive dog sniff, [the claimant's] last-minute travel arrangements, the very large amount of currency he was carrying, and his arguably questionable explanation for why he had the currency are sufficient, taken together, to support a reasonable belief that the government" will be able to establish the funds are subject to forfeiture).

Read together, these cases illustrate (consistent with the Fourth Circuit's holding in *Mondragon*) that a complaint seeking forfeiture of currency pursuant to 21 U.S.C. § 881 survives a motion to dismiss where the government has alleged several of the following: a large quantity of currency, concealment of the currency or packaging consistent with drug trafficking, a positive dog alert for the presence of the odor of narcotics, and an implausible explanation for or inconsistent statements regarding the use and source of the funds. Here, the government's complaint does just that. The affidavit of HSI Special Agent James M. Stull states:

8

1. <u>The claimant was carrying an enormous amount ($189,150) of currency</u>. As numerous Courts of Appeals have recognized, "[a] common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages . . . They don't, because there are better, safer means of transporting cash if one is not trying to hide it from the authorities." *United States v. $242,484.00*, 389 F.3d 1149, 1161 (11th Cir.2004); *accord, e.g., United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007) ("A large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is 'strong evidence' of such a connection."); *United States v. $99,990.00 in U.S. Currency*, 69 F. App'x 757, 763 (6th Cir. 2003) ("carrying a large sum of cash is strong evidence of some relationship with illegal drugs"); *United States v. $122,640.00 in U.S. Currency*, 81 F. Supp. 3d 482, 494 (D. Md. 2015) ("By itself, the quantity of currency seized is suggestive of unlawful activity."); *cf. United States v. Cardena*, 842 F.3d 959, 986 (7th Cir. 2016) (on defendant's appeal for conviction of drug-trafficking, among other crimes, defendant's "use of large amounts of cash was independently relevant as evidence of his involvement in a drug conspiracy") (citing *$242,484.00 in U.S. Currency*); *United States v. Dong Dang Huynh*, 420 F. App'x 309, 320 (5th Cir. 2011) (in "determining whether a defendant knowingly possessed [the proceeds of unlawful activity], this Court has long considered a large amount of cash to be an indicator of guilty knowledge") (also citing *$242,484.00 in U.S. Currency*).

2. <u>Packaging consistent with drug trafficking</u>. The money seized was made up of bills of mixed denominations bundled with rubber bands, which is consistent with the ways in which drug traffickers carry currency. *See $242,484.00 in U.S. Currency*, 389 F.3d at 1161–62 (crediting testimony of law enforcement officer that the way "bundles [of cash] were wrapped in

rubberbands in various denominations with the lack of any kind of bank wrappers wrapped around the bundle . . . was indicative of a drug organization").

      3.     <u>Two positive dog sniffs</u>.  A trained narcotics detection canine alerted positively to the odor of narcotics not only on the currency itself, but also on the bags in which the claimant carried the currency, indicating narcotics may have been transported in the bags.  *See Mondragon*, 313 F.3d at 866 (positive dog alert to the back seat of a car, rather than the currency found therein, coupled with concealment of a large quantity of currency, "supported a reasonable belief that drugs had been transported in the car, probably in the secret compartment, and that the currency found in the compartment was linked to drug trafficking"); *United States v. $107,840 in U.S. Currency,* 784 F. Supp. 2d 1109, 1129 (S.D. Iowa 2011) ("While there are reasons to question the significance of the drug dog's alert on [] currency, the Court has no such reservations regarding the drug dog's alert to the snowboard bags [also in the claimant's vehicle].  Unlike currency, the Court is unaware of — and Claimant has failed to present — any evidence of widespread contamination of snowboard bags with narcotic residue.  Absent such evidence, the Court finds the drug dog's alert on the snowboard bags to be additional evidence that the defendant currency is substantially connected to drug trafficking.").

      4.     <u>Implausible explanation for carrying the currency</u>.  The claimant's explanation that he was carrying the cash to help broker an exotic case sale is "marginally plausible" at best.  It is suspicious that he refused to name the parties purportedly engaged in the deal, even when it became clear that doing so would lead to seizure of the money.  *Cf. United States v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 468 (2005) (noting in order granting summary judgment for the government that claimant seeking to recover seized funds had acted "suspicious" at the airport because, among other things, he "denied ownership of the cash, alleging that it belonged

to a friend (whom he refused to name)"). At the very least, the claimant could have called the individual allegedly purchasing the car to ask if, under the circumstances, he would be permitted to break the non-disclosure agreement he claimed to have entered.

The provided explanation is moreover inconsistent with the claimant's stated business — that is, as the owner and manager of a defense contracting company, which is not located in Baltimore or California and which is not a cash-intensive business.

    5.    <u>A profile consistent with a drug courier</u>.  The claimant told officers that he was being paid ten percent of the currency he was carrying for the trip — a whopping $18,915 — for transporting it. He also claimed that he had travelled with cash when leaving Baltimore only two weeks before. The claimant's statements that he previously travelled with large amounts of cash, made a significant profit (hundreds of times larger than any possible wire fee) therefrom, and the route the defendant was flying — from Maryland, a drug distribution state, to California, a supply state, without any stops or apparent connection to North Carolina or Nevada, where the claimant allegedly works and lives — is consistent with the profile of a drug courier.

These facts, under the totality of the circumstances, are sufficient to establish a reasonable belief that the government will be able to prove at trial the forfeitability of the currency.

**B. The claimant's arguments disregard the applicable standard of review, which requires the Court to review the complaint under the "totality of the circumstances," and cites outdated law.**

The claimant's motion attempts to overcome the near-uniform authority cited by arguing that three of the factors identified — the large quantity of cash, the positive dog sniff, and the similarity of his profile to a drug courier's — viewed in isolation, would be insufficient to establish a reasonable belief that the seized funds are subject to forfeiture. This argument disregards the applicable standard of review, which requires courts to review a forfeiture

complaint as a whole, under the totality of the circumstances.  *E.g.*, *United States v. $15,860 in U.S. Currency*, 962 F. Supp. 2d 835, 838 (D. Md. 2013).

Thus, the claimant's argument (at 6) that a large sum of currency is not, alone, sufficient to satisfy Rule G(2) is true, but irrelevant.  Here, the government has alleged not only a large quantity of cash, but also a number of additional factors, the totality of which are sufficient to meet Rule G(2)(f)'s pleading requirement.

So, too, the problem with the claimant's argument (at 7) that drug courier "characteristics are of little value in the forfeiture context *without other evidence* establishing the requisite substantial connection" (quoting *United States v. $80,760 in U.S. Currency*, 781 F. Supp. 462, 476 (N.D. Tex. 1991) (emphasis added)).

Finally, with respect to the claimant's argument (at 6-7) that a positive dog sniff is of little probative value, it is notable that the claimant has not cited a single case decided in the past twenty years.  Perhaps that is because the line of cases the claimant cites has been called into question, if not overruled, by more recent scientific evidence.  *See* note 4, *supra*.  In *Funds in the Amount of $30,670.00*, the Seventh Circuit upheld a district court's grant of summary judgment to the government in a forfeiture action where a positive dog sniff was the most significant evidence connecting the money seized to narcotics.  403 F.3d 448, 467 (2005).  In its ruling, the court rejected its earlier position that dog sniff evidence was not entitled to probative weight and found persuasive the scientific evidence concluding that drug dogs react not to the smell of cocaine itself, but to the smell of a chemical that is released by cocaine.  *Id.* at 458-60.  Because of its short evaporation rate, the court found that the chemical byproduct to which dogs react is found on bills that have only *recently* been in the proximity of cocaine.  *Id.*

In any event, although some courts may continue to question how much weight to accord a positive dog sniff on *currency*, even these courts harbor no similar hesitation in crediting a positive dog alert on other items found in close proximity to the money.  *See Mondragon*, 313 F.3d at 866; *$107,840 in U.S. Currency,* 784 F. Supp. 2d at 1129.  And, here, a dog alerted positively to the scent of narcotics to the claimant's bags as well as the currency seized.

## Conclusion

For the foregoing reasons, the court should deny the claimant's Motion to Dismiss.  In the alternative, the government respectfully requests that the Court grant the government leave to amend the complaint to provide additional facts.[5]

                                           Respectfully submitted,

                                           Stephen M. Schenning
                                           Acting United States Attorney

By: _____/s/_____
     Dana Brusca
     Assistant United States Attorney
     36 South Charles Street
     Fourth Floor
     Baltimore, Maryland 21201
     (410) 209-4800

---

[5] *See, e.g.*, *United States v. $41,320 U.S. Currency*, 2014 WL 6698426, at *3 (D. Md. Nov. 25, 2014) (granting the government's motion for leave to amend civil forfeiture complaint because "Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires," and "[l]eave should be denied only when amendment has been unduly delayed, or would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.").