IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,   \*

    Plaintiff,   \*

v.   \*   Civil Action No. RDB-17-0735

$189, 150.00 IN U.S. CURRENCY,   \*

    Defendant.   \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This is an *in rem* civil forfeiture action arising under 21 U.S.C. § 881(a)(6) and brought by the United States Government against Defendant $189,150.00 in U.S. Currency ("Defendant Currency"). Claimant Michael P. Strohl ("Claimant" or "Strohl") moves to dismiss this action, alleging that the Complaint fails to state a claim upon which relief can be granted. (ECF No. 6.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, Claimant's Motion to Dismiss (ECF No. 6) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F. 3d 388, 390 (4th Cir. 2011). The factual allegations are largely drawn from the Affidavit of Special Agent James M. Stull of the U.S. Department of Homeland Security, Homeland Security Investigations, which is attached to the Complaint and incorporated by reference. (Compl., ECF No. 1 at ¶ 8; Stull Aff., ECF No. 1-2.)

1

Around 6:15 a.m. on October 25, 2016, two Homeland Security Investigations agents responded to a call at Baltimore Washington International Airport ("BWI"). (ECF No. 1-2 at ¶ 6.) The call came from the Maryland Transportation Authority Police, who stated that Transportation Security Administration officers had identified through security screening an individual with a large quantity of cash in a carry-on bag. (*Id.*) The individual was the Claimant, Michael Strohl. (*Id.*)

Strohl agreed to accompany the Maryland police to an interview room and to speak with the Homeland Security agents regarding the currency. (*Id.*) Before the interview began, he provided the agents with two forms of identification: a North Carolina driver's license and a U.S. Government Armed Services Identification card. (*Id.* at ¶ 7.) An agent ran a search for references to Strohl in law enforcement data bases, which did not return any information. (*Id.* at ¶ 8.) During the interview, Strohl explained that after retiring from the military he became involved in a variety of business ventures. (*Id.* at ¶ 9.) One venture was with the "Lelantos Group," which he explained was a holding company for several defense-related contracts and interests in several defense-related companies. (*Id.*) Strohl provided the agents with two business cards that identified himself as the Chief Executive Officer of the Lelantos Group. (*Id.* at ¶ 7.) One business card identified an office location in Las Vegas, Nevada, while the other business card identified an office in Mooresville, North Carolina. (*Id.*)

He then stated that when going through the security screening, he voluntarily told the TSA officers about the currency in his carry-on. (*Id* at ¶ 10.) Specifically, he asserted that he told the officers that there was around $180,000.00 in his bag because he was acting as a

2

broker for two parties related to the purchase of a Porsche in California. (*Id.*) To verify his claim, an agent asked Strohl to provide information about the parties for whom he was brokering the sale. (*Id.* at ¶ 12.) Strohl responded that he could not reveal the name of the parties due to a nondisclosure agreement. (*Id.*) While speaking to another agent, Strohl stated that two weeks prior he had been permitted to board a flight at BWI with a large sum of money. (*Id.* at ¶ 11.) He also told the agent that he receives ten percent "for the trip" and that his trip that day would be his last. (*Id.*)

The agents then asked Strohl to remove the currency from his bag for a K9 sniff. (*Id.* at ¶ 13.) He agreed to do so, and the agents then saw that the currency consisted of loose bundles of a mixture of denominations rubber banded together. (*Id.*) The K9 first conducted an exterior scan of Strohl's carry-on bags, which rendered a positive alert for the presence of the odor of narcotics. (*Id.*) The K9 then also conducted a scan of the currency itself, which again rendered a positive alert for the presence of the odor of narcotics. (*Id.*) Finally, the agents checked to see if Strohl was in fact licensed as a money remitter or as a money remitting business. (*Id.* at ¶ 14.) A search of the available databases and records did not indicate that he held any such license. (*Id.*) An agent then seized the currency, totaling &189,150.00. (*Id.*)

## STANDARD OF REVIEW

Both the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R.") equally apply to *in rem* forfeiture actions. *United States v. $15,860 in U.S. Currency*, 962 F.Supp.2d 835, 838 (D. Md. 2013); *United States v. $2,200,000 in U.S. Currency*, No. ELH-12-3501, 2014 WL 1248663, at *5

3

(D. Md. Mar. 26, 2014). The pleading standard for civil forfeiture actions was initially promulgated in *United States v. Mondragon,* 313 F.3d 862, 865 (4th Cir. 2002), which held that the Government must "state[] the circumstances giving rise to the forfeiture claim with sufficient particularity" to allow a claimant to conduct a "meaningful investigation of the facts and draft[] a responsive pleading." The *Mondragon* Court interpreted the pleading standard in prior Supp. R. E(2)(a), which was superseded by the 2006 enactment of Supp. R. G(2). *See United States v. All Assets Held at Bank Julius Baer & Co.,* 571 F.Supp.2d 1, 16 (D.D.C. 2008) (noting that Supp. R. G(2)(f) supplanted Supp. R. E(2), but adopted the *Mondragon* standard for determining the sufficiency of a complaint).

A motion to dismiss made pursuant to Supp. R. G(8)(b) is governed by Supp. R. G(2), which provides in pertinent part that the Complaint shall "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). Although the pleading standard under Supp. R. G(8)(b) is higher than the standard for Fed. R. Civ. P. 8(a), the pleading requirements are nonetheless satisfied if the Government pleads enough facts to support a "reasonable belief" that the Government will be able to meet its burden of proof at trial. *See United States v. Real Property Located at 5208 Los Franciscos Way,* 385 F.3d 1187, 1193 (9th Cir. 2004) (noting that the Government "is not required to prove its case simply to get in the courthouse door").

## ANALYSIS

Claimant Strohl moves to dismiss the Complaint for failure to state a claim, arguing that the Complaint does not allege a sufficient connection between the Defendant Currency and alleged drug trafficking or support a reasonable belief that the government will be able

to meet its burden of proof at trial. (ECF No. 6-1 at 5.) To meet its burden of proof at trial, the Government must ultimately prove by a preponderance of the evidence a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). However, the Government need not produce all evidence that will be introduced at trial and may instead "gather[] evidence after the filing of a Complaint for forfeiture to establish, by a preponderance of the evidence, that [the] property is subject to forfeiture." 18 U.S.C. § 983(c)(2). Moreover, "no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

Strohl does not argue that the Complaint fails to provide a number of "elemental circumstances" underlying the Government's claim. (ECF No. 601 at 5.) Rather, he argues that the allegations "do not, by themselves, show a sufficient connection between the currency and drug trafficking." (*Id.*) However, when assessing whether the Government has provided sufficient allegations to support a nexus between the alleged criminal offense and the Defendant Currency, the Court must look to the totality of the circumstances. *Mondragon*, 313 F.3d at 866; *United States v. $15,860 in U.S. Currency*, 962 F.Supp.2d 835, 839 (D. Md. 2013) ("The government does not have to fully prove its case to meet the pleading requirements, but must only state enough facts for the Court to find a reasonable belief, based on the totality of the circumstances, that the defendant property is linked to narcotic trafficking.").

The Complaint's attached Affidavit, submitted by Special Agent James M. Stull of Homeland Security Investigations, alleged numerous details supporting an inference that the

5

Government will be able to meet its burden at trial. First, Strohl was carrying $189,150.00 in currency in a carry-on bag at BWI. *See United States v. $122,640.00 in U.S. Currency*, 81 F.Supp.3d 482, 494 (D. Md. 2015) ("By itself, the quantity of currency seized is suggestive of unlawful activity." (citing *United States v. $14,800.00 in U.S. Currency*, No. ELH–11–3165, 2012 WL 4521371, at *5 (D. Md. Sept. 28, 2012))). Second, the currency was packaged in loose bundles with mixed denominations rubber banded together. *See United States v. $15,860 in U.S. Currency*, 962 F.Supp.2d 835, 839 (D. Md. 2013) (explaining that two important factors in determining whether currency is linked to narcotic trafficking are "the value of the defendant property [and] unusual packaging or an attempt to conceal the defendant property"). Third, a K9 positively alerted to the odor of narcotics both for Strohl's bag carrying the currency and for the currency itself. *See Mondragon*, 313 F.3d at 865 (explaining that "the nature of the dog's alert, coupled with the rest of the circumstances" supported that the currency found was linked to drug trafficking) (emphasis omitted). Finally, Strohl refused to provide the names of the clients he was allegedly carrying the money for in order to broker the agreement. *See $15,860 in U.S. Currency*, 962 F.Supp.2d at 839 (explaining that an important factor for determining whether currency is linked to narcotic trafficking is "the plausibility of the story explaining the claimant's acquisition of the property"). Further, Stull testified that based on his training and experience, Strohl's description that he receives a percentage for a "trip" is more akin to a courier, paid by the trip and on the basis of the quantity he transports, than a broker.

Considering the totality of the circumstances, the alleged facts in the Complaint and Affidavit support an inference that the Defendant Currency constitutes proceeds from illegal

drug distribution. Accordingly, the allegations clearly support a "reasonable belief" that the Government will be able to meet its burden of proof at trial, and Strohl has thus been provided sufficient factual allegations with which to draft a responsive pleading. Accordingly, Strohl's Motion to Dismiss (ECF No. 6) is DENIED.

## CONCLUSION

For the reasons stated above, Claimant Strohl's Motion to Dismiss (ECF No. 6) is DENIED.

A separate order follows.

Dated: February 6, 2018

_____
Richard D. Bennett
United States District Judge